Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABDULLAH ZAIN,<br><br>Plaintiff,<br><br>vs.<br><br>PROVENTION BIO, INC., ASHLIEGH PALMER, AVERY CATLIN, JOHN JENKINS, NANCY WYSENSKI, WAYNE PISANO, and RITA JAIN,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Abdullah Zain ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Provention Bio, Inc. ("Provention Bio" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act").

2. Defendants intend to sell the Company to Sanofi S.A. ("Parent") through merger vehicle Zest Acquisition Sub, Inc. ("Merger Sub, and together with Parent, "Sanofi") as a result of an unfair process and Plaintiff seeks to enjoin an upcoming tender offer on a proposed all cash transaction.

3. The terms of the Proposed Transaction were memorialized in a March 13, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Sanofi will acquire all the outstanding shares of Provention Bio common stock for $25.00 per share in cash. As a result, Provention Bio will become an indirect wholly-owned subsidiary of Sanofi (the "Proposed Transaction").

4. On March 24, 2023, Provention Bio filed a Solicitation/ Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

5. Plaintiff alleges that the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Provention Bio shares in favor of the Proposed Transaction.

7. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

8. The Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Provention Bio, provided by Provention Bio to the Company's financial advisors BofA Securities, Inc. ("BofA") and Centerview Partners LLC ("Centerview"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA and/or Centerview and provided to the Company and the Board.

9. This action seeks to enjoin the Proposed Transaction.

## PARTIES

10. Plaintiff is a citizen of Canada and, at all times relevant hereto, has been a Provention Bio stockholder.

11. Defendant Provention Bio is a clinical stage biopharmaceutical company that focuses on the development and commercialization of therapeutics and solutions to intercept and prevent immune-mediated diseases.

12. Provention Bio is incorporated in Delaware and has its principal place of business at 55 Broad Street, 2nd Floor, Red Bank, New Jersey 07701. Shares of Provention Bio common stock are traded on the Nasdaq Stock Exchange under the symbol "PRVB."

13. Defendant Ashleigh Palmer ("Palmer") has been a Director of the Company at all relevant times. In addition Palmer is a Company Co-Founder and serves as the Company's Chief Executive Officer ("CEO").

14. Defendant Avery Catlin ("Catlin") has been a director of the Company at all relevant times.

15. Defendant John Jenkins ("Jenkins") has been a director of the Company at all relevant times.

16. Defendant Nancy Wysenski ("Wysenski") has been a director of the Company at all relevant times.

17. Defendant Wayne Pisano ("Pisano") has been a director of the Company at all relevant times. In addition Defendant Pisano serves as the Chairman of the Company Board.

18. Defendant Rita Jain ("Jain") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 12 - 17 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

23. Provention Bio is a clinical stage biopharmaceutical company that focuses on the development and commercialization of therapeutics and solutions to intercept and prevent immune-mediated diseases.

24. In its November 3, 2022 press release announcing its 2022 Q3 financial results, the Company reported that it had conducted key strategic objectives by reaching target enrollment during the third quarter of 2021 and expects to report top-line data from the PROTECT study in the second half of 2023 relating to its Phase 3 trials evaluating the drug Teplizumab for treatment of recent onset Type 1 diabetes.

25. Speaking on the results, CEO Defendant Palmer said, "Throughout the third quarter, we have continued to interact with the FDA in support of our resubmitted, breakthrough therapy designated, teplizumab BLA for the delay of clinical type 1 diabetes in at-risk individuals."

26. Despite this upward trajectory, the Individual Defendants have caused Provention Bio to enter into the Proposed Transaction without providing requisite information to Provention Bio stockholders such as Plaintiff.

***The Proposed Transaction***

27. On March 13, 2023, Provention Bio and Sanofi issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Paris and Red Bank, N.J. March 13, 2023** Sanofi and Provention Bio, Inc., a U.S.-based, publicly traded biopharmaceutical company focused on intercepting and preventing immune-mediated diseases including type 1 diabetes (T1D), have entered into an agreement under which Sanofi has agreed to acquire Provention Bio, Inc., for $25.00 per share in cash, representing an equity value of approximately $2.9 billion.
>
> The transaction adds an innovative, fully owned, first-in-class therapy in type 1 diabetes to Sanofi's core asset portfolio in General Medicines and further drives its strategic shift toward products with a differentiated profile. TZIELD (teplizumab-mzwv) was approved in the U.S. last year as the first and only therapy to delay the onset of Stage 3 type 1 diabetes (T1D) in adults and pediatric patients aged 8 years and older with Stage 2 T1D.
>
> The acquisition is a strategic fit for Sanofi at the intersection of the company's growth in immune-mediated diseases and disease-modifying therapies in areas of high unmet need, and its expertise in diabetes. Sanofi will continue to utilize its capabilities in diabetes to maximize TZIELD's potential as a transformative therapy globally and in the U.S., aiming to delay the onset of Stage 3 type 1 diabetes for some of the approximately 65,000 people diagnosed every year1. The purchase builds on an existing co-promotion agreement with Provention Bio that is already delivering TZIELD to patients in need of this immune-mediated therapy.
>
> Olivier Charmeil
>
> Executive Vice President, General Medicines, Sanofi
>
> "The acquisition of Provention Bio builds on Sanofi's mission to deliver best- and first-in-class medicines and resonates with our purpose of chasing the miracles of science for the benefit of people. By coupling Provention Bio's transformative innovation with Sanofi's expertise, we aim to bring life-changing benefits to people at risk of developing Stage 3 type 1 diabetes. Any additional indications, approvals and pipeline assets only serve to further our excitement. Given our existing partnership and complementary work in the diabetes and immunology spaces, we foresee a seamless integration and execution."
>
> TZIELD: First and only treatment indicated to delay onset of Stage 3 T1D
>
> TZIELD is a CD3-directed antibody indicated to delay the onset of Stage 3 T1D in adults and pediatric patients aged 8 years and older with Stage 2 T1D. Stage 3 T1D

is associated with significant health risks, including diabetic ketoacidosis, which can be life threatening, and patients who progress to Stage 3 T1D eventually require insulin injections for life.

TZIELD is also in late-stage clinical development for the treatment of pediatric and adolescent patients that are newly diagnosed with clinical T1D (Stage 3). A Phase 3 trial, PROTECT, is currently underway and top line results are expected in the second half of 2023. Additional opportunities for TZIELD include re-dosing and formulations as well as new therapeutic indications.

Ashleigh Palmer

Chief Executive Officer and Co-Founder, Provention Bio, Inc.

“Sanofi and Provention Bio share a common vision of bringing new therapies to patients with autoimmune diseases. Under our co-promotion agreement, our companies have made significant progress educating healthcare providers and increasing patient access during the initial U.S. commercial launch of TZIELD. Sanofi’s global expertise and commitment to immunology makes them an ideal acquiror and positions our innovative therapy to reach more patients as quickly as possible.”

Provention Bio also brings certain pipeline assets in early development in immune-mediated diseases.

Transaction Terms

Under the terms of the merger agreement, Sanofi will commence a cash tender offer to acquire all outstanding shares of Provention Bio, Inc. for $25.00 per share in cash, reflecting a total equity value of approximately $2.9 billion.

The consummation of the tender offer is subject to customary closing conditions, including the tender of a number of shares of Provention Bio, Inc. common stock, that together with shares already owned by Sanofi or its affiliates, represents at least a majority of the outstanding shares of Provention Bio, Inc. common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions.

If the tender offer is successfully completed, then following the successful completion of the tender offer, a wholly owned subsidiary of Sanofi will merge with and into Provention Bio, Inc., and all of the outstanding Provention Bio, Inc. shares that are not tendered in the tender offer will be converted into the right to receive the same $25.00 per share in cash offered to Provention Bio, Inc. shareholders in the tender offer. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing

> conditions, Sanofi currently expects to complete the acquisition in the second quarter of 2023.
>
> PJT Partners is acting as exclusive financial advisor to Sanofi and Weil, Gotshal & Manges LLP is acting as its legal counsel. BofA Securities, Inc. and Centerview Partners LLC are acting as financial advisors to Provention Bio, Inc. and Ropes & Gray LLP is acting as its legal counsel.

***The Materially Misleading and/or Incomplete Recommendation Statement***

28. On March 24, 2023, the Provention Bio Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

29. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

a. Adequate information regarding the composition of the Committee of the Company Board created to "oversee and monitor the Company's evaluation of potential sale transactions", including whether the members of this Committee were independent directors;

b. Adequate reasoning as to why the Board agreed to enter exclusivity with Sanofi, fail to conduct any sort of market check for potentially interested third parties prior to entering the Proposed Transaction, and did not include a "go-shop" provision for a post-entry market check;

c. Adequate information as to why the Board engaged multiple financial advisors incurring additional unnecessary costs;

d. Whether the terms of any confidentiality agreements entered during the sales process between Provention bio on the one hand, and any other third party (including Sanofi), if any, on the other hand, differed from one another, and if so, in what way;

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Sanofi) throughout the sales process, if any, would fall away; and

f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Provention Bio's Financial Projections*

30. The Recommendation Statement fails to provide material information concerning financial projections for Provention Bio provided by Provention Bio management and relied upon by BofA and Centerview in their analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

31. Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, BofA notes that it reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of the Company furnished to or discussed with BofA Securities by the management of the Company, including certain financial forecasts relating to the Company prepared by the management of the Company".

Similarly, Centerview notes that it reviewed, "internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections and probabilities of success relating to the Company prepared by management of the Company and furnished to Centerview by the Company for purposes of Centerview's analysis."

32. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

33. With regard to *Management Projections* prepared by Provention Bio management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in BofA's and Centerview's analyses:

a. Risk-Adjusted Net Revenue;

b. Risk-Adjusted Gross Profit;

c. EBIT; and

d. Unlevered Free Cash Flow (excludes NOL usage).

34. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of BofA's or Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.

35. The Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

36. In the Recommendation Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

37. With respect to the *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the following:

a. The specific metrics observed for each selected company;

b. The inputs, metrics, and assumptions used to determine the utilized enterprise value to PoS Adjusted revenue multiple reference range of 1.8x to 3.7x that was applied to the estimates of calendar year 2026 PoS Adjusted revenue for the Company;

c. The estimate of the net cash of the Company as of December 31, 2022, utilized; and

d. The number of fully-diluted shares of company stock outstanding.

38. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

a. The observed metrics for each precedent transaction;

b. The specific date on which each precedent transaction closed;

c. The value of each precedent transaction; and

d. The inputs, metrics, and assumptions used to determine the utilized enterprise

value to PoS Adjusted revenue multiple reference range of 2.7x to 5.1x as applied to estimates of calendar year 2026 PoS Adjusted revenue for the Company;

e. The estimate of the net cash of the Company as of December 31, 2022, utilized; and

f. The number of fully-diluted shares of company stock outstanding.

39. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

a. The terminal value for the Company calculated;

b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate of negative 60.00% after calendar year 2040;

c. The estimated benefits from the Company's net operating loss carryforwards as of December 31, 2022 utilized;

d. The future losses and a research and development tax credit as of December 31, 2022, utilized;

e. The specific inputs and assumptions used to determine the utilized discount rates ranging from 12.00% to 15.00%;

f. The Company's weighted average cost of capital;

g. The utilized range of present values the net cash of the Company as of December 31, 2022;

h. The utilized estimate of cash proceeds net of transaction costs to be received by the Company in connection with future equity financings assumed to occur in 2023 and 2024; and

i. The number of fully-diluted shares of company stock outstanding.

40. With respect to the *Wall Street Analysts Price Targets*, the Recommendation Statement fails to disclose the following:

a. The specific Wall Street analyst estimate consulted;

b. The identity of the author and the firm that created the estimate consulted;

c. The specific inputs and assumptions used to determine the utilized mid-point cost of equity of 13.50%;

41. With respect to the *Precedent Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

a. The exact value of each transaction compared;

b. The date on which each transaction compared closed; and

a. The underlying inputs, metrics, and assumptions used to determine the selected a range of premiums of 51% to 112%.

42. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

43. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Provention Bio stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

<u>*Centerview*</u>

44. In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

45. With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

a. The specific metrics observed for each selected company;

b. The inputs, metrics, and assumptions used to determine a the utilized reference range of EV/2026E Revenue Trading Multiples of 1.5x to 4.0x as applied to the Company's estimated calendar year 2026 risk adjusted revenue;

c. The Company's net cash as of December 31, 2022; and

d. The number of fully-diluted outstanding Shares as of March 8, 2023.

46. With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

a. The observed metrics for each precedent transaction;

b. The specific date on which each precedent transaction closed;

c. The value of each precedent transaction; and

d. The inputs, metrics, and assumptions used to determine the utilized reference range of EV / 4-Year Forward Revenue Multiples of 2.5x to 5.5x;

e. The estimate of the net cash of the Company as of December 31, 2022, utilized; and

f. The Company's net cash as of December 31, 2022; and

g. The number of fully-diluted outstanding Shares as of March 8, 2023.

47. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

j. The specific inputs and assumptions used to determine a discount rates ranging from 12.0% to 15.0%;

k. The Company's weighted average cost of capital;

l. The implied terminal value of the Company calculated;

m. The inputs, metrics and assumptions used to determine a perpetuity growth rate of negative 60% year over year;

n. The specific value of tax savings from usage of the Company's federal net operating losses as of December 31, 2022, utilized;

o. The specific value of future losses and research and development tax credit as of December 31, 2022, utilized;

p. The Company's net cash as of December 31, 2022; and

q. The specific impact of assumed equity raises in 2023 and in 2024 as set forth in the Forecasts utilized; and

r. The number of fully-diluted outstanding Shares as of March 8, 2023.

48. With respect to the *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the following:

d. The specific Wall Street analyst estimate consulted; and

e. The identity of the author and the firm that created the estimate consulted.

49. With respect to the *Precedent Premiums Paid Analysis*, the Recommendation

Statement fails to disclose the following:

c. The exact value of each transaction compared;

d. The date on which each transaction compared closed; and

e. The underlying inputs, metrics, and assumptions used to determine the selected a range of premiums of 50.0% to 115.0%.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

51. Plaintiff repeats all previous allegations as if set forth in full herein.

52. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

53. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

54. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

55. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

56. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

57. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

58. Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Individual Defendants)**

59. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

62. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

63. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

64. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65. Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements

were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Provention Bio's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Provention Bio within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Provention Bio to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Provention Bio and all of its employees. As alleged above, Provention Bio is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 29, 2023

**BRODSKY & SMITH**

By: Evan J. Smith

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

**OF COUNSEL**

Douglas Risen
Risen Law, LLC
1900 JFK Blvd., Suite 910
Philadelphia, PA 19103
Phone: 215.201.2824
drisen@comcast.net